All rise. Illinois Telephone 5th Division is now in session. Honorable Justice Robert B. Gordon is presiding. Everyone may be seated. Good morning to all. First case is 15-0870. With the lawyers who are going to argue before the court, please approach the bench and introduce yourself to the court. Good morning, Your Honors. My name is Carolyn Cavoda from O'Melanie and Myers on behalf of Janssen. Good morning. I'm Stephen Collins and I represent the City of Chicago. Okay. Do you understand that you each have 15 minutes? Okay. And do you want to reserve some time for rebuttal? Yes, Your Honor. I would like to reserve five minutes for rebuttal. Okay. Let's proceed. Good morning and thank you, Your Honors, for your attention. We respectfully ask that the court should reverse the circuit court's ruling and hold as a matter of law that documents Janssen produced pursuant to a false claims ordinance subpoena are exempt. May I ask you this? Why is this matter moot? Well, it is moot as to the particular documents that USA Today requested and received. But there are about 114,000 other documents that we produced that still remain with the City of Chicago and are the subject of our declaratory judgment action. And as to those documents, it's not moot. So those other documents were not produced, just the three documents that USA Today required? Correct. And USA Today could request the remainder of the documents tomorrow and we would be back, sort of. And are these documents confidential or are they confidential? They are confidential. Certain of them were marked confidential. Of the 114,000? Certain of them were marked confidential. I don't know the exact number. All right. Well, then how do we determine which ones should be disclosed and which ones should not? All right. So the reason that they are exempt under I-FOIA doesn't have to do with whether they were designated confidential or non-confidential. It has to do with subsection 5 of the Chicago False Claims Ordinance, which is called a disclosure exemption. So the issue of whether or not they're confidential or not is really not an issue here, right? No. That's right. All right. Really the issue is whether two I-FOIA exemptions apply, 7-1-A and 7-1-G. 7-1-A applies because subsection K of the False Claims Ordinance, which is called a disclosure exemption, and says that documents collected through an investigatory subpoena of the False Claims Ordinance are exempt. All right. That triggers section 7-1-A of I-FOIA, which in turn exempts documents. It's a little convoluted. I apologize. Documents that are exempted under other laws. Well, I'm not talking about apples and oranges here. I mean, the provision that you're speaking of is a state law. We're talking about an ordinance here. Correct. All right. So I'm not talking about apples and oranges. No, we're not, Your Honor, because we believe it's abundantly clear that when the reference in I-FOIA 7-1-A to state law includes city ordinances. What does it specifically say there? Well, there isn't a specific statement in the statute that says that. But as I'm sure Your Honor knows, home rule authority is written into the Illinois Constitution and has been since 1970. And both the Constitution itself in multiple places and a long line of Illinois cases hold that home rule units exercise the same authority as the state legislature, except where the state legislature very specifically states that it is limiting home rule authority. And where does this statute say that it's specifically limiting this particular ordinance? No, in other words, the general rule is that home rule units exercise the exact same authority as the state legislature, except where the legislature specifically says we are limiting home rule units, and for home rule units, this subject is off limits. That's my question. Where does this provision indicate that they're limiting the city of Chicago's ordinance? It doesn't. And for that reason, because it isn't limited, because it isn't limited, the state and a home rule unit legislate as equal sovereigns. And we don't even need to wonder about that, you know, and think, gosh, is that what they meant? Because there's legislative history that makes it perfectly clear that that is what they meant. So the sponsor of the bill, I FOIA, Barbara Flynn Curry, said that with respect to home rule units, that they would be able to act concurrently with the state, it would not be appropriate to prohibit the concurrent exercise of home rule powers in that area. So in other words, Your Honor, the legislature specifically considered the question, should home rule units be empowered to legislate in this area? And they decided, yes, they should. And that explains the absence of any specific statement saying, all right, we're limiting home rule units as to I FOIA and I FOIA exemptions. They didn't want to do that. The intent of the legislature was to permit home rule units. I got that, but I still don't see how your client falls underneath this particular provision that you've cited. Subsection K? Right. So subsection K simply says, let me see if I can find it, that documents collected in the course of a false claims ordinance investigation are exempt from I FOIA disclosure. Our documents were collected in the course of a false claims ordinance investigation. And so if subsection K is a valid, you know, is valid, then it in turn triggers I FOIA exemption 71A. Does that make sense? That makes sense. I still don't see it though. Why? Because K specifically identifies the areas where it affects and refers to federal or state law. It doesn't say anything about ordinances or regulations. Okay, so that's I FOIA section 71A. It does refer to state law. Again, we believe it's clear that state law in that instance includes municipal ordinances because the legislature did not specifically limit home rule authority. And that is the prevailing legal context. And in fact, the law is very clear that if the legislature wants to preclude home rule ordinances, they must make a specific statement. Here, there is no specific statement in 71A limiting home rule limits. And the city doesn't even argue that there is. All right? So state rule includes subsection K. There is another issue as to subsection K, but it has to do with whether there was a drafting error referring to the APA. So subsection K says documents and information provided under any subpoena issued under subsection A of the False Claims Ordinance shall be exempt from disclosure under the Illinois Administrative Procedures Act. Okay? So that's subsection K. That says if you give documents to the city in a False Claims Ordinance investigation, they shall be exempt from disclosure under the Illinois APA. Now the problem with that is the Illinois APA does not apply to cities. The city agrees with that. We agree with that. So the question is, is that section just a dead letter? We don't believe it should be. We don't believe it should be because it's very clear what happened here. Well, maybe they were addressing a different issue and not the issue here at hand when the legislature put that language in there. No, I don't think so, because it says they shall be exempt from disclosure under the Illinois APA. The Illinois APA expressly does not apply to cities. Wait, but what argument do you have to support that argument? Which argument? Well, you said that you don't think so. Well, I don't think it's disputed that it doesn't apply to cities. Okay? It's undisputed that it doesn't apply to cities. The question then is, is there a way to construe the statute so that it has some meaning? Otherwise, it's just meaningless. Again, it may be because it was drafted to address a different issue. I don't think so. That's my question. Where's your support for that argument? Because there are no disclosure or exemption provisions in the Illinois Administrative Procedure Act. So, let me back up a second. You know, you ought to save some time for rebuttal. You're ready to pass your time. Okay. All right. Thank you. All right. May it please the Court. At the outset, we agree with Jensen that issues with respect to documents that have not been disclosed are not moot. On the merits, however, neither of the gen... Why is it not moot? Because those documents have not been disclosed. So, in other words, the documents that were requested by USA Today have been disclosed. And so issues concerning those particular documents are moot. The remainder of Jensen's production to the city, however, has not been disclosed publicly. And so we agree that issues concerning those documents are not moot. Do you believe that the documents have to be confidential documents? You know, we're not under the exemptions that Jensen is arguing in favor of in this particular case because those exemptions first are the exemption that applies where state law prohibits disclosure. Now, Jensen relies on the city's false claims ordinance and argues that it prohibits disclosure. But Jensen did not argue in its opening brief that the city's ordinance is state law as the exemption itself requires. So the point is, therefore, waived. Well, what about the argument that state law and ordinances are all the same? We respectfully disagree with that proposition, Your Honor. The city's ordinances are not the law of the state. And even aside from that, looking at the provisions of the ordinance itself, the ordinance does not prohibit disclosure. Well, does the ordinance conflict with the state law? The ordinance does not conflict with FOIA, Your Honor, in that the 718 exemption in FOIA does not include city ordinances. And so those are entirely separate. So do you agree they have the exemption? We believe these documents are not exempt because under the 718 exemption, the city's ordinance does not provide a basis for Jensen to claim that particular exemption. And even looking at the provisions of the ordinance itself, it does not, on its own terms, prohibit disclosure because it authorizes the Corporation Counsel to disclose documents where he or she deems it necessary for the enforcement of the city's laws. So that exemption does not apply here. Neither does the second exemption that Jensen argues in favor of, and that is the trade secrets exemption. Now, that exemption has been read to apply where a third party does business with the government and voluntarily discloses its records to the government. And FOIA disclosure would have a chilling effect or make it more difficult for the government to obtain records in the future. And that's just not a concern here because the city, under the false claims ordinance, has the power to issue subpoenas to obtain records and also to petition the circuit court to enforce those subpoenas. So any concerns about a chilling effect are just not at play here because regardless. But aren't they arguing also that there's a potential harm with regards to competition, competitive harm? As I understand Jensen's argument in the appeal with respect to the documents that have not already been disclosed, they are only arguing that disclosure would make it more difficult for the city to obtain records in similar cases in the future. So in other words, they're not arguing that the particular documents in the production contain trade secrets or would inflict on Jensen some competitive harm. Nonetheless, because the false claims ordinance empowers the city to issue subpoenas and petition the circuit court to enforce those subpoenas, the city's ability to obtain records in similar cases in the future will not be impaired. And so for that reason, the 7-1-G exemption does not apply either. And if the court has no further questions, for these reasons, the judgment should be affirmed. Thank you, Your Honors. So with respect to 7-1-A, let me also refer the court to King v. Burwell, which is the Supreme Court's 2015 decision with respect to the Affordable Care Act. We believe that that decision is powerful support for opposition, that the language of the statute must be read in its complete legal context. In that case, the Supreme Court considered a provision that persons who enrolled in state health care exchanges, that's the statutory provision that enrolling in a state exchange could make a person eligible for a tax credit. The court construed state exchange to include federal exchange. Why? Because it was consistent with the entire statutory context. We think that is similar to what the court is facing here, but actually it's much stronger here because there's an entire body of Illinois law that provides that absent a limitation, state law includes home rule unit enactments. What about Blue Star Energy? Let me talk about that for a second. So Blue Star Energy basically held that if there's a federal counterpart as well, in other words, federal law is to the same effect, that if disclosure of documents will make it more difficult for the agency to get similar compliance or similar cooperation in the future, then the case falls within the trade secret exemption. And that's the case that we're relying on, Your Honor. And I know the city argues that, well, we can always subpoena the documents. It's true they can subpoena the documents, but it's equally true that this is not trade secret, sir. Well, I mean, the law has construed it under the trade secret exemption, both on the federal and the state side. Why? I'm not 100 percent sure, but that's the law. It's can they construe the trade secret exemption? You want us to write a decision that's going to say that when you subpoena documents pursuant to a certain investigation, that those are exempt, no matter what the documents say. If it's documents that have to do with Donald Duck and Mickey Mouse, it's still exempt. That's correct, Your Honor, because that is what the law provides. Since Blue Star, the legislature has amended 7-1-G. So should we take that into consideration in terms of the legislature's amending the provision that you're asking us to look at with regards to the new language that's contained in the amendment? You know, I apologize, Your Honor, I'm not familiar with the amendment to 7-1-G. Well, it goes to the competitive harm aspect. Okay, so we are not relying on the competitive harm aspect. Again, we are relying on the chilling effect, which is set forth in Blue Star. It basically says if it's going to make cooperation, obtaining similar information in the future, more difficult than the documents fall within the disclosure exemption. And we think that it's true the city can subpoena documents, but subpoena recipients can and will fight back. If there is a direct line from, I mean, understand what a subpoena can collect. I'm sure Your Honors do. I mean, it can collect the most sensitive documents in the company, hundreds of thousands of them. If there is a direct line from the subpoena recipient to the city to the press, subpoena recipients are going to fight tooth and nail to prevent turning over those documents, very understandably. They don't want their documents splashed across the headlines. You know, in this instance, the application of this exemption, it makes perfect sense. And it is for this reason that it should make perfect sense. But if somebody is going to subpoena all kinds of documents pursuant to an investigation, that means that the media is never to see any of those documents. Your Honor, just like in civil discovery, they will see them to the extent they come out in the course of subsequent litigation. Of course they will. But the one irony of this rule, it would make, if Jansen turned the same documents over to the city in civil discovery, they would be confidential. It would make a subpoena recipient's production of documents unshielded and open to the press and the public on this just simple submission of an I-4U request, whereas the same documents produced in litigation would be completely off-limits. And the public will see them as in the normal course, as they're produced in litigation. When is the normal course, 10 years later, 20 years later? Your Honor, it is exactly the same on the federal side. Federal FOIA documents collected through a federal FOIA subpoena are exempt from FOIA disclosure. They are then, because again, the power of the city is so broad and so sweeping, it can collect documents. The standard is relevance. It's, you know, believe that they may be in possession of. It is the most minimal standard. And so it is logical that they should be shielded from disclosure while the investigation is going on. So what is the request of the NIA? We are asking for you to find as a matter of law that Jansen's documents, 7-1-A and 7-1-G of I-4U apply. So subsection K triggers the application of 7-1-A, and then under 7-G and the Blue Star case, the documents are exempt because disclosure of the documents would make it more difficult for the city to obtain similar information in the future. One other point, Your Honors. The city mentioned that subsection K does not prohibit disclosure because it gives the city discretion. But that is discretion for effective law enforcement. Number one, the city has never argued in this case that it disclosed our documents to USA Today to further the interests of effective law enforcement. They're not arguing that. They argue that I-4U compels them, that I-4U compels them to produce these documents. Also, that would be the exception that ate the rule. It's completely inconsistent with the structure of the statute, with the language of that provision, which is False Claims Ordinance Section I, I-2, I think, which says, which creates a general rule of nondisclosure. No person shall examine the documents except. And it would allow, it would be like the exemption that ate the rule. It would allow the city corporation council to disclose documents wherever, whenever, for any reason. That cannot be what the city council intended when it enacted that provision. Okay, thank you. All right, we will take this case under advisement. You will hear from us shortly.